JUAN EUGENIO SERRALLÉS SÁNCHEZ, Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

FÉLIX JUAN SERRALLÉS SÁNCHEZ, Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

THE CIVIL-AGRICULTURAL AND INDUSTRIAL PARTNERSHIP "SUCCESSION J. SERRALLÉS", Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

Nos. 7809, 7810 and 7811.   Argued January 31, 1939.—Decided June 13, 1939.

*V. Zayas Pizarro,* for appellants.   *B. Fernández García,* Attorney General, and *M. Rodríguez Ramos,* Assistant Attorney General, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Juan Eugenio Serrallés, Félix Juan Serrallés and the Civil-Agricultural and Industrial partnership, Succession J. Serrallés filed these suits which involved the same legal questions, against the Treasurer of Puerto Rico, R. Sancho

Bonet, claiming the amounts of $1,050 in the first, $1,218.01 in the second and $2,508.75 in the third, with interest and costs, said sums having been paid under protest.

They alleged in their complaints that they had bought three airplanes, one from the "Fairchild Airplane Co.", of Hagerstown, Maryland, in February, 1937, one from the "Stimson Aircraft Co.", of Wayne, Michigan, in November, 1936 and another from the "Beechcraft Aircraft Co.", of Wichita, Kansas, also in November, 1936. That they had recorded them in the Federal Department in Washington, D. C., "licensed aircrafts" for the private use of the purchasers in Puerto Rico between this Island and the United States and other nations. That in February, 1937, the first of the said planes arrived here and the other two in November, 1936.

They also alleged that they were required by the defendant Treasurer to pay a tax on said airplanes as though they were included in paragraph 8 of Section 16 of the Internal Revenue Law of 1931 (Act No. 83, 1931, page 504) as it was amended by Act No. 108 of May 15, 1936 (Laws of 1936 (1) page 566) which with surcharges, interest and fines, amounted to the sums indicated which were paid under protest and which they claimed in accordance with Act No. 8 of April 19, 1927 Laws of 1927, page 122) and its amendments, for the following reasons:

1. Because said airplanes were purchased in the United States and recorded under a federal license to be used not only in Puerto Rico but for trips to the United States and other nations and they are not therefore subject to the Internal Revenue Laws of Puerto Rico;

2. Because the Internal Revenue Law of Puerto Rico does not, as a matter of fact, assess any tax whatsoever on airplanes;

3. Because the amounts assessed as interest are illegal, since they are in excess of the rate authorized by law;

4. Because the complainants did not refuse to deliver the invoices nor did they refuse to make the payment within the statutory limit, having limited themselves to adopting a defensive attitude.

5. Because the valuations of the airplanes made by the Treasurer are inexact; and

6. Because the surcharges of 5 per cent on the alleged value of the airplanes, plus the interest at the illegal rate of 12 per cent per annum, plus the administrative fine of $25 for the alleged refusal of the complainants to deliver the invoices, plus the administrative fines of $25 for not having paid the tax on time, constitutes four additional taxes or penalties on the same object and for the same act which is not permitted by law and which, if authorized by the law, would be unconstitutional for lacking the requirement of uniformtiy, for being a quadruple tax, in constituting a quadruple penalty equivalent to a taking without due process of law and because the Treasurer is not authorized to impose fines, which power cannot be delegated to him by the legislature.

In his answers the Treasurer accepted some facts and denied others. In short, he maintained the validity of his acts.

The cases went to trial. The complainants presented witnesses and documentary evidence. The court held against them and they appealed to this Court and in a common brief to the three appeals they alleged that the district court committed nine errors: 1, in holding that airplanes are included in the provisions of paragraph 8, Section 16 of the Internal Revenue Law; 2, in holding that the case of *McBoyle* v. *United States*, 283 U. S. 25 is not applicable; 3, in holding that the imposed tax does not interfere with the National Act of Air Commerce of 1926; 4, in holding that the case of *Station WBT* v. *Poulnot,* 46 Fed. (2d) 671 is not applicable; 5, in not holding that the valuation made by the Treasurer was inexact; 6, in holding that the interest was collected according to the law; 7, in not holding that the complainants

delivered the necessary documents and paid the tax within the time set by law; 8, in not holding that the surcharges, interest and penalties constitute four penalties for one and the same act; and 9, in rendering its judgments against the facts and the law. According to the opinion which we have formed of the case, it will be enough to consider and decide the two first errors for decision of the appeal.

In its findings of facts and opinion the district court found that the facts relating to the purchase of the airplanes in various states of the Union, their registry in the Department of Aviation of the Department of Commerce in Washington and the assessment by the Treasurer and payment by the complainants under protest of the sums claimed such as were alleged in the complaints, were proven. It also found as proven the facts that the airplanes "are used only in the air; that they came flying from the United States when they were imported into Puerto Rico; that their range of activity overlapse the geographical limits of the Island of Puerto Rico, since they are used for trips to Saint Thomas (Virgin Islands) to the Dominican Republic and to other foreign places for carrying out the business of the Succession Serrallés,... that sometimes those airplanes had been lent, through friendship, to certain persons but that said services of transportation has not been charged for."

As we know the first two allegations of error state that the Puerto Rican Act does not include airplanes for purposes of the tax and that the district court should have so held, not only on account of the provisions of the statute, but also for the reasoning of the case of *McBoyle* v. *United States,* 283 U. S. 25.

The law applicable is Section 16, paragraph 8 of the Internal Revenue Law of Puerto Rico as it was amended by Act 108 of 1936 (Laws of 1936 (1) page 568) which states:

"8. *Self-propelling vehicles and apparatuses and launches and motor boats.*—On all self-propelling vehicles and apparatuses such as automobiles, auto-wagons, trucks, locomotives, tractors, touring-cars,

motorcycles (by whatever name known) including chassis, motors, auto-bodies without motors, tanks, batteries, launches with or without motors, motors for same, including out-board motors, and on all parts or accessories for any of the articles herein mentioned, excluding pneumatic tires, inner tubes and solid tires, which are sold, transferred, manufactured, used in, or introduced into Puerto Rico, a tax of ten (10) per cent on the selling price in Puerto Rico, if the said selling price in Puerto Rico does not exceed one thousand five hundred (1,500) dollars; *Provided,* That on the sale, transfer, manufacture, use in, or introduction into Puerto Rico, of self-propelling vehicles or apparatus, and parts and accessories therefor, described in this section, with the exception of launches and boats, the selling price of which in Puerto Rico exceeds one thousand five hundred (1,500) dollars and does not exceed two thousand (2,000) dollars, the tax shall be twelve and a half (12½) per cent on the selling price; and on the sale, transfer, manufacture, use in or introduction into Puerto Rico of self-propelling vehicles or apparatus, and parts and accessories therefor, described in this section, with the exception of launches and boats, the selling price of which in Puerto Rico exceeds two thousand (2,000) dollars, the tax shall be fifteen (15) per cent on the selling price; *Provided, further,* That persons not residents of Puerto Rico, using their own automobiles for personal use only, shall be exempt from the payment of the tax prescribed by this Act for such period as they shall use a special license of the Commissioner of the Interior. On the expiration of that period or upon acquiring the regular license of the said Commissioner or before, if the automobile is devoted to purposes other than the above-mentioned, the internal-revenue tax shall be paid.''

The word *vehicle* comes from the latin *vehiculum* which comes from *vehare* which means to carry, to convey. It is used to designate the carriage or any other artifice in which persons or things may be conveyed from one place to another. See volume two, page 981 of the *Diccionario Enciclopédico de la Lengua Castellana* by Zerolo.

This being so, we must conclude that within the broadest meaning of the word, the lower court was correct in considering an airplane a vehicle. It is stated in 2 C. J. 299, based on the following citation: '' 'Airship' has been defined to include every kind of vehicle or structure intended for use

as a means of transporting passengers or goods or both in the air."

But it cannot be denied that the first impression that the word produces, the natural and the usual meaning, does not carry the idea of an airplane, but that of a carriage which travels on land.

As the Supreme Court of the United States through its Associate Justice Mr. Holmes said by the case cited by the complainants:

"Section 2 defines the motor vehicles of which the transportation in interstate commerce is punished in Section 3. The question is the meaning of the word 'vehicle' in the phrase 'any other self-propelled vehicle not designed for running on rails.' No doubt etymologically it is possible to use the word to signify a conveyance working on land, water or air, and sometimes legislation extends the use in that direction, e. g., land and air, water being separately provided for, in the Tariff Act, September 22, 1922, c. 356, Section 401 (b), 42 Stat. 858, 948. But in everyday speech 'vehicle' calls up the picture of a thing moving on land."

And this interpretation had been made five years ago when the Puerto Rican Legislature had for the last time amended the Act in question in the manner in which it was applied to the imports of the complainants.

Besides, recently this very Supreme Court of Puerto Rico, interpreting the same Act in the case of *Bull Insular Line, Inc.* v. *Sancho Bonet, Treasurer,* 53 P.R.R. ____, ____, through its Associate Justice Mr. Wolf, stated as follows:

"We have no question at all that a vehicle is a term generally applied to objects that move on land and not to anything that moves on water and that it was used with that meaning in the act."

And besides, even though it is true that specific words used by the legislator to state his thought do not go before but follow the general words, it is also true that a reading of the Act gives such a strong impression in the sense that it is limited to land vehicles that only by forcing the imagination could airplanes be included in it. The same distinction

separately of launches and motor boats—maritime transportation—makes even clearer the thought of the legislator.

We think that the Act interpreted in itself shows that the legislator in approving it did not think of airplanes, and if he did, he did not wish to include them within its provisions, perhaps thinking that as this was a new means of transportation always difficult and expensive in its beginnings, no burden should be placed upon it until its adoption should be consolidated, and by these means contribute to its development which is now so necessary to the progress of a country.

The judgments appealed from must be reversed and other judgments rendered in their stead awarding the return of the amounts paid under protest with interest and costs but not including attorney's fees.